Nott, J.
The plaintiffs obtained judgment against the defendant, at Fairfield November term 1823, and lodged their executions in the office of the sheriff of Fairfield the 17th of January 1824.
William Estes and John Crosby and William Davis obtained two judgments against defendant in Chester, Oct. 1823, and lodged their executions in the office of the sheriff of Chester the 8th of Nov. 1823, and in the office of the sheriff of Fairfield the 20th of February 1824. On the 10th of March, ¡ 824, the sheriff of Fairfield levied on the defend-, ants land in Fairfield by virtue of the three executions. And on the fifth of April sold the same for $600.
The question is, which of these executions is entitled to the money?
Previous to the year 17S9 all writs were issued from, and made returnable to, Charleston; all judgments were entered up and all executions issued from there. It must then have been understood, that judgments from the time they were entered up and executions from the time they were lodged in the sheriffs office, had a lien on the lands and goods and chattels of the defendant, throughout the state. In the year 1789, an act was passed giving to the circuit courts complete original and final jurisdiction, &c. (P. L. 487.) The eleventh clause of thqt act requires the clerks of the several circuit courts to send 911 account of all the judgments enter *242 ed up in their courts to Charleston, twice a year, to be there put ou record; and the fourteenth clause of the same act provides that no judgment not docketed and entered in the books of the clerk, at the seat of government, shall affect any property real or personal, as to purchasers or mortgagees, or have any preference against heirs, executors, or administrators,. in their administration in their ancestors, testators or intestates estates, except the property real and personal within the particular district where such judgment next shall be entered up This act extends to purchasers'and mortgagees only, and not to creditors It must however have been predicated of the idea, that lands were bound by judgments throughout the state. For if they were not so bound, the restriction was unnecessary; and judgments must still have the same binding efficacy as before, except so far as they were restrained by this act. The act does not embrace executions. They must therefore, remain as before. By the act of 1721, (P. h. 116) executions are made to run into all the counties in the state; and the object is declared to be “to prevent persons from escaping out of one county into another, or moving their goods, to avoid the payment of their just debts, affer judgment had against them;” which seems to imply that the lien should attach, although the property may be removed. The same priority is preserved in the act of 1789, directing the order in which the debts of deceased persons shall be paid. There are also other acts authorizing executions to run throughout the state. From all of which I think we must conclude, that executions bind property throughout the state, from the time they are entered in the sheriff’s office. The party however, may loose his priority by delay. A Sheriff is not bound to search every office throughout the state, to ascertain what executions may be in them. He is not bound to notice any except those in his own office. If however, one be sent from another district, he is then bound to ascertain when it was first entered in the office of the district from whence it issued. And must pay over the proceeds of *243 all Sales, which may be made, or monies which may be in hi* hands at the time of such notice to each execution according to its legal priority. But he will not be liable for monies actually paid over to junior executions in his office without such notice. The sheriff therefore in this case must pay the money in his hands in the manner herein directed,
Gregg and Hunter for the motion.
Williams contra,